**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| KEVIN COREY SCHNEIDER | ) | 3:09-cv-00667-LRH (WGC) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| SHAWN HOFFMAN, *et. al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Docs. # 90, # 99 (Errata), # 101 (Errata).)[1] Plaintiff opposed (Docs. # 98, # 98-1) and Defendants have replied (Doc. # 100). After a thorough review, the court recommends that Defendants' motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Kevin Corey Schneider (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 6) at 1.) The events giving rise to this litigation took place while Plaintiff was housed at High Desert State Prison (HDSP). (*Id.*) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Isidro Baca, Calvin Bembry, Shawn Hoffman, Dwight Neven, and Bruce Stroud. (*Id.* at 2-3, Screening Order (Doc. # 5).)

[1] Refers to court's docket number.

In Count I, Plaintiff alleges he got into an altercation on January 2, 2008, with defendant Hoffman in connection with a search for suspected contraband. (Doc. # 6 at 5.) Plaintiff concedes that he called defendant Hoffman names, and that he initially resisted attempts of restraint. (*Id*.) However, Plaintiff alleges that once he was successfully restrained and was lying face-down on the rocks, defendant Hoffman maliciously and sadistically lunged his knee into Plaintiff's back, causing injuries to his back and ribs. (*Id*. at 5-7.) On screening, the court determined that Plaintiff states a colorable excessive force claim under the Eighth Amendment against defendant Hoffman. (Doc. # 5 at 4.)[2]

Count III concerns the disciplinary hearing held in connection with the January 2, 2008 altercation with defendant Hoffman wherein Plaintiff was charged with assault and battery. (Doc. # 6 at 9-11.) Plaintiff alleges that his due process rights were violated when he was precluded from calling witnesses at the disciplinary hearing and was not provided with a written statement of the evidence relied upon and reasons for the disciplinary action taken. (*Id*. at 9-11.) The court determined on screening that Plaintiff states colorable due process claims in connection with these allegations. (Doc. # 5 at 6.)

Defendants now move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies with respect to the excessive force claim; (2) Plaintiff was not subjected to excessive force; (3) there was no due process violation because Plaintiff declined to call witnesses at the disciplinary hearing and had notice of the evidence relied upon in finding him guilty of the disciplinary charges; and (4) Defendants are entitled to qualified immunity. (Doc. # 90.)

## II.  LEGAL STANDARD

### A.  Unenumerated Motion to Dismiss for Failure to Exhaust Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

---

[2] Count II was dismissed on screening.  (Doc. # 5 at 5.)

1   prison, or other correctional facility until such administrative remedies as are available are

2   exhausted."42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies

3   irrespective of the forms of relief sought and offered through administrative avenues. *Booth v.*

4   *Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot be

5   satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA

6   requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion"

7   refers to "using all steps the agency holds out, and doing so *properly* (so that the agency

8   addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024

9   (7th Cir. 2002)) (emphasis in original).

10      This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth

11  two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is

12  fully addressed on the merits by the administrative agency and appealed through all the

13  agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical

14  procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006).

15  "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion.'

16  Defendants must show that Plaintiff failed to meet both the merits and compliance tests to

17  succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

18      The failure to exhaust is an affirmative defense, and a defendant bears the burden of

19  raising and proving failure to exhaust. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

20  The failure to exhaust administrative remedies is treated as a matter in abatement, and is

21  properly raised in an unenumerated 12(b) motion to dismiss. *Wyatt*, 315 F.3d at 1119 (citations

22  omitted); *see also Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365,

23  368 (9th Cir. 1988).  As such, failure to exhaust is not properly raised in a motion for summary

24  judgment, but if it is so raised, it should be treated as a motion to dismiss. *Ritza*, 837 F.2d at

25  368 (citations omitted). If the court ultimately finds that Plaintiff has not exhausted his

26  nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice. *Wyatt*,

27  315 F.3d at 1119-20, as noted in *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir.

28

2007); *see also Ritza*, 837 F.2d at 368. In *Ritza*, the court noted the distinction between summary judgment and dismissal for matters in abatement as it concerns the court's authority to resolve factual disputes:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement...,should be distinguished from a motion for summary judgment relates to the method of trial. In ruling on a motion for summary judgment the court should not resolve any material factual issue...If there is such an issue it should be resolved at trial...On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue...and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

*Ritza*, 837 F.2d at 369 (citations omitted). Therefore, the court must treat the exhaustion issue as one raised in an unenumerated 12(b) motion, and is tasked with resolving factual issues that arise.

During the time period in question, for prisoners within the NDOC system, exhaustion of administrative remedies required compliance with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 90-8 (Ex.  S).) The administrative process consisted of: (1) an informal level grievance; (2) a first level grievance appealing the informal grievance decision; and (3) a second level grievance appealing the first level grievance decision. (*Id.*  at 11.)

**B. Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

4

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party

1  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

2  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

3  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

4  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

5  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

6  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

7  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

8  that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions

9  and allegations of the pleadings and set forth specific facts by producing competent evidence

10  that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

11       At summary judgment, a court's function is not to weigh the evidence and determine the

12  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

13  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

14  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

15  significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

16  omitted).

17  **III. DISCUSSION**

18  **A.  Unenumerated Motion to Dismiss for Failure to Exhaust Administrative**

19  **Remedies**

20       Defendants submit the declaration of Mr.  Byrne, stating that the only grievance filed

21  by Plaintiff that relates to the alleged use of excessive force by defendant Hoffman is grievance

22  2006-28-16209. (*See* Doc. # 90-1 at 3, ¶ 12 (Byrne Decl.).) Defendants argue that this grievance

23  was not accepted at any of the three levels; therefore, Plaintiff did not properly grieve the

24  excessive force issue and the claim should be dismissed. (Doc. # 90 at 10.)

25       **1.  Grievance 2006-28-16209**

26       The grievance records submitted by Defendants in support of their motion reveal that

27  Plaintiff filed an informal level grievance for grievance 2006-28-16209 on November 16, 2008.

28

# 90-2 at 9.) The informal level grievance states, in relevant part: "On 1.2.08 S C/O Hoffman used excessive force "AFTER" I was already apprehended.  When I was lying face down handcuffed, not moving, not saying a word S C/O Hoffman maliciously and sadistically jumped down with his knee into my back." (*Id.* (emphasis original).) The grievance was received by prison personnel on November 17, 2008. (*Id.*) In response, the prison issued a memorandum dated December 15, 2008, stating that grievance 2006-28-16209 was improper because the alleged excessive force incident was previously addressed by Plaintiff in grievance 2006-26-81007. (Doc. # 90-2 at 8.)  Specifically, the memorandum states, "[t]his issue was addressed by the IG under grievance # 2006-26-81007; it was returned due to it being too vague therefore they were unable to make a determination about the incident." (*Id.*)

Plaintiff filed his first level grievance for grievance 2006-28-16209 on January 20, 2008, stating the following:

> [This issue] has never been addressed by the administration at HDSP on any of my grievances I have filed. On January 2nd of 2008 in front of unit SAB S C/O Hoffman used excessive force after I was already handcuffed lying face down in the rocks not moving or saying any words when S C/O Hoffman with evil intentions lunged his knee into my back to inflict unnecessary pain on me.

(Doc. # 90-2 at 6-7.) The grievance was received by NDOC personnel on January 21, 2009. (*Id.* at 6.) In response, the prison issued another improper grievance memorandum dated January 28, 2009.  (*Id.* at 4.)  The memorandum merely states: "Not accepted-You signed Informal level response on 1-22-09." (*Id.*)

Plaintiff filed a second level grievance for grievance 2006-28-16209 on March 1, 2009, asking why prison administrators had not responded to the issue. (Doc. # 90-2 at 3.)  It was received by prison officials on March 2, 2009. (*Id.*)  In response, Plaintiff received yet another improper grievance memorandum, dated March 12, 2009. (*Id.* at 2.) The memorandum states: "Not accepted-Issue was addressed and investigated by the I.G. on grievance 20062681007. They responded information was too vague, unable to make determination, unknown which officer, which inmate, when what happened. Force was use [sic] because you refused to obey orders." (*Id.*)

**2.  Grievance 2006-26-81007**

While Mr. Byrne's declaration does not reference grievance 2006-26-81007, Defendants argue that it does not serve to exhaust Plaintiff's administrative remedies with respect to the excessive force claim. (*See* Doc. # 90 at 11:22-27.)

Plaintiff filed the informal level grievance for grievance 2006-26-81007 on January 21, 2008. (Doc. # 90-2 at 20-22.) It states, in part:

> On Jan. 3, 2008 at approximately 5:00 p.m. in front of unit 5AB S C/O Hoffman instructed for me to get against the wall.... I was cuffed up, laying face down on the rocks, not moving not saying anything when S C/O Hoffman literally jumped up to his feet and in angry manner came thrusting down with his knee into my back and with me laying face down on the rocks the force of his body weight fractured my rib.

(Doc. # 90-2 at 20-22.) The grievance was received by NDOC officials on January 23, 2008. (*Id.* at 20.) The informal level grievance was denied on June 23, 2008, stating: "Force was used because you refused to obey orders to be restrained. Your medical records were checked and you did not sustain any broken bones. You admitted you failed to follow orders when you came off the wall." (*Id.* at 19.)

It appears that Plaintiff originally submitted his first level grievance for grievance 2006-26-81007 on July 23, 2008 (Doc. # 90-2 at 18), and it was received by NDOC personnel on July 24, 2008.  (*Id.*) In response, Plaintiff received an improper grievance memorandum stating that the first level grievance was not accepted because the "[i]ssue was address [sic] on 6-20-08 and denied." (*Id.* at 17.) Plaintiff resubmitted the first level grievance on August 6, 2008. (*Id.*)

Plaintiff filed a second level grievance on September 28, 2008. (Doc. # 90-2 at 13-15.) The grievance states, in part:

> In the response I received from A.W.P. Jim Henson was that my 1st level grievance was not accepted because the issue was addressed on 6.20.08 and denied.  Whats [sic] the purpose of the states [sic] grievance procedures if the issue was denied on the informal level and no investigation was conducted.

(Doc. # 90-2 at 13.)  The grievance was received by NDOC personnel on September 29, 2008. (*Id.*) The summarized response, as outlined in the Nevada Offender Tracking Information System (NOTIS) states:

8

Your grievance was sent to the Inspector General's Office for investigation. However, they reported that information was too vague, unable to make a determination, unknown which Officer, which Inmate, when, what happened. Force was used because you refused to obey orders to be restrained. Your Medical Records were checked and you did not sustain any broken bones. You admitted you failed to follow orders when you came off the wall.

(Doc. # 90-2 at 16.)

### 3. Analysis

#### i. Contradictions in Defendants' Argument

The court is troubled by the fact Defendants contradict themselves when, on the one hand, they present a declaration and argument that the *only* grievance Plaintiff filed related to the alleged use of excessive force by defendant Hoffman is grievance 2006-28-16209 (*see* Doc. # 90 at 10: 3-6), Doc. # 90-1 at 3, ¶ 12 (Byrne Decl.)), and then, on the other hand, present evidence that the excessive force issue was in fact raised in a previously filed grievance, number 2006-26-81007. (*See* Doc. # 90 at 11:22-28, 12:1-4, Doc. # 90-2 at 8, 13-23.)

Mr. Byrne submitted a declaration stating conclusively that grievance 2006-28-16209 is "the only grievances [sic] he filed that asserting [sic] Officer Hoffman used excessive force[.]" (Doc. # 90-1 at 3, ¶ 12.)   In direct contradiction to this statement, the evidence presented by Defendants shows that the excessive force issue was also raised in grievance 2006-26-81007. (Doc. # 90-2 at 13-23.) Moreover, grievance 2006-28-16209 itself states that the excessive force issue was previously raised in grievance 2006-26-81007.  (Doc. # 90-2 at 2, 8.)

#### ii. Administrative Remedies Were "Effectively Unavailable" to Plaintiff

For the reasons set forth below, the court finds that NDOC's conduct with respect to grievances 2006-28-16209 and 2006-26-81007 rendered the administrative remedies "effectively unavailable" to Plaintiff.

Defendants have the burden of proving that Plaintiff has failed to meet both the merits and compliance tests for exhaustion.  *Jones*, 457 F.  Supp.  2d at 1134. The purpose of exhaustion is two fold: (1) to "give an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court"; and (2) to "promote

9

1    efficiency" by allowing claims to "be resolved much more quickly and economically in

2    proceedings before an agency than in litigation in federal court," by sometimes "convinc[ing]

3    the losing party not to pursue the matter in federal court," and by "produc[ing] a useful record

4    for subsequent judicial consideration" in cases which do reach federal court. *Ngo*, 548 U.S. at

5    89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

6         The Ninth Circuit has recognized several exceptions to the exhaustion requirement. *See*

7    *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010) (finding the plaintiff inmate was

8    precluded from exhausting his administrative remedies because of the warden's mistake and

9    holding that the mistake rendered the inmate's administrative remedies "effectively

10   unavailable"); *see also Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) ("We have

11   recognized that the PLRA therefore does not require exhaustion when circumstances render

12   administrative remedies 'effectively unavailable.'"). The Ninth Circuit has specifically

13   recognized that "improper screening of an inmate's administrative grievances renders

14   administrative remedies 'effectively unavailable' such that exhaustion is not required under the

15   PLRA." *Id.* at 823. The Ninth Circuit commented:

16        [T]he exception we recognize today promotes exhaustion's benefits by removing
          any incentive prison officials might otherwise have to avoid meaningfully
17        considering inmates' grievances by screening them for improper reasons...[it]
          helps ensure that prison officials will consider and resolve grievances internally
18        and helps encourage use of administrative proceedings in which a record can be
          developed that will improve the quality of decision-making in any eventual
19        lawsuit. At the same time, this exception does not alter prisoners' incentive to
          pursue administrative remedies to the extent possible.
20   *Id.* at 823.

21        Application of this exception requires that the inmate establish the following:

22        (1) that he actually filed a grievance or grievances that, if pursued through all
          levels of administrative appeals, would have sufficed to exhaust the claim that he
23        seeks to pursue in federal court, and (2) that prison officials screened his
          grievance or grievances for reasons inconsistent with or unsupported by
24        applicable regulations.
     *Sapp*, 623 F.3d at 823-24.
25

26        Here, it is clear that Plaintiff took all the steps he could to exhaust his claim, but was

27   effectively precluded from doing so because of the conduct of prison officials.

28

                                                    10

1

### a. Grievance 2006-26-81007

With respect to grievance 2006-26-81007, Plaintiff filed an informal level grievance alerting prison officials to the alleged excessive force incident. (*See* Doc. # 90-2 at 20-22.) It was denied with a statement that the use of force was justified. (*Id.* at 19.) When Plaintiff filed his first level grievance, it was not accepted on the basis that the issue had been addressed at the informal level.  (*Id.* at 17-18.) The rejection of the first level grievance makes no sense, because under AR 740, Plaintiff is required to complete all three levels of the grievance process. Following the guidelines of AR 740, Plaintiff filed his second level grievance, and received a response that the grievance had been sent to the Inspector General's Office who determined that it was too vague. (*Id.* at 13-16.)

It is clear that but for the improper rejection of the first level grievance, Plaintiff would have exhausted his administrative remedies with respect to the alleged excessive force claim, satisfying the requirements for application of the exception set forth in *Sapp*.

Defendants now argue that in grievance 2006-26-81007, Plaintiff was asking for an investigation, and did not allow NDOC officials an opportunity to address and resolve the concerns about excessive force.  (Doc. # 90 at 11:22-28, 12:1-4.)  A review of the grievance documentation 2006-26-81007 reveals that this is simply not the case. Plaintiff filed an informal level grievance that clearly alerted NDOC to the alleged excessive force incident. This grievance was denied.  When Plaintiff filed a first level grievance, it was rejected as improper, stating that the issue had been addressed.  How can Defendants now, in good faith, take the position that Plaintiff did not give them an opportunity to address the issue? How was Plaintiff supposed to correct the "deficiency" with respect to his first level grievance?  Defendants have presented a hollow argument, which ignores clear Ninth Circuit authority that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. *Sapp*, 623 F.3d at 822.

### b. Grievance 2006-28-16209

According to the improper grievance memorandum for grievance 2006-28-16209,

11

Plaintiff did previously grieve the excessive force issue, and that grievance was denied for lack of detail.  Grievance 2006-28-16209 was Plaintiff's apparent attempt to clarify the issue, and it was denied as duplicative. Plaintiff, rightfully confused by the prison's apparently contradictory response to his informal level grievance, completed his first and second level grievances for grievance 2006-28-6209.

Defendants argue now that Plaintiff's recourse for dealing with a grievance that is not accepted is to correct the deficiency and re-file the grievance at that level.  (Doc. # 90 at 11: 3-5.) They conclude that Plaintiff's failure to do so constitutes an abandonment of the grievance. (*Id.*) What Defendants do not provide is an explanation of how exactly Plaintiff was to correct the proffered deficiency, *i.e.*, that his grievance is duplicative, when he was told that his previously filed grievance was too vague.

It is clear that but for the improper rejection of this grievance as duplicative, Plaintiff would have exhausted his administrative remedies with respect to the alleged excessive force claim again.

### c. Conclusion

It is the court's observation that NDOC was giving Plaintiff the proverbial "run-around" with respect to both grievances filed concerning the alleged excessive force incident. This is not the first time the court has observed this type of conduct on behalf of NDOC. (*See* Trans. of April 30, 2012 hearing, Doc. # 35 at 21, in *Hull v. Cox*, Case No.  3:11-cv-00535-LRH-WGC.) The goals of the grievance procedure of resolving inmate complaints informally and promoting efficiency can only be accomplished if NDOC undertakes a sincere and legitimate effort to effectuate its regulations.

The court finds that Plaintiff's grievances would have sufficed to exhaust his excessive force claim but for prison officials improper rejection of Plaintiff's first level grievance for grievance 2006-26-81007, and improper rejection of grievance 2006-28-16209 as duplicative. Therefore, Defendants' motion to dismiss the excessive force claim should be denied as Plaintiff's remedies were rendered "effectively unavailable."

1   **B. Summary Judgment**

2       **1. Excessive Force**

3           **a. Standard**

4         The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

5   Const. amend. VIII.  It "embodies broad and idealistic concepts of dignity, civilized standards,

6   humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

7   quotations omitted).  The "unnecessary and wanton infliction of pain...constitutes cruel and

8   unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*,

9   475 U.S. 312, 319 (1986).

10         "[W]henever prison officials stand accused of using excessive physical force in violation

11   of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

12   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

13   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

14   *McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

15   Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm,

16   contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

17   475 U.S. at 327).

18         In determining whether the use of force is excessive, courts are instructed to examine

19   "the extent of the injury suffered by an inmate[,]" "the need for application of force, the

20   relationship between that need and the amount of force used, the threat 'reasonably perceived

21   by the responsible officials,' and 'any efforts made to temper the severity of the forceful

22   response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

23         An inmate need not establish serious injury; however, the lack of serious injury is

24   relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

25   "The extent of injury may [ ] provide some indication of the amount of force applied." *Id.*

26         That being said, not "every malevolent touch by a prison guard gives rise to a federal

27   cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments

28

necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79. If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be limited. *See id.* at 1180.

Courts must be deferential when reviewing the necessity of using force. *See Whitley*, 475 U.S. at 321-22; *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2009), *cert. denied*, 131 S.Ct. 1465 (Feb. 22, 2011) ("Prison officials are entitled to deference whether a prisoner challenges excessive force or conditions of confinement." (citing *Whitley*, 475 U.S. at 322)).

### b. Analysis

### i. Defendant Hoffman's Version of Events

Defendant Hoffman contends that he was engaged in a struggle with Plaintiff, who had refused to comply with his orders, and his application of force was reasonable, in a good-faith effort to restore order, and not maliciously to inflict pain. (Doc. # 90 at 13-14.) In addition, defendant Hoffman argues that Plaintiff's lack of severe injuries from the incident indicates that the proper amount of force was applied. (*Id.* at 14.)

According to defendant Hoffman, he was assigned to work in the culinary for Unit 5ab on January 2, 2008. (Doc. # 90-9 at 2, ¶ 4.) During his shift, he noticed that Plaintiff had several oranges in his hands that he had collected from other inmates, and he instructed Plaintiff not to remove the oranges from the culinary. (*Id.* ¶ 5.) After the inmates exited the culinary, defendant Hoffman formed a suspicion that Plaintiff had not left the oranges in the culinary; therefore, he asked Plaintiff to place his hands on the wall to be searched. (*Id.* ¶¶ 6-7.)

Plaintiff initially refused, but ultimately complied with the order to face the wall to be searched. (*Id.* ¶ 7.) When Plaintiff was facing the wall, defendant Hoffman told him to widen his stance, and used his foot to move Plaintiff's feet wider. (*Id.* at 3, ¶ 8.) Plaintiff responded that defendant Hoffman was grabbing him too hard, and called defendant Hoffman a punk. (*Id.*)

As a result, defendant Hoffman ordered Plaintiff to "cuff up." (Doc. # 90-9 at 3, ¶ 9.) Plaintiff said no, turned to face defendant Hoffman, and placed his right hand on defendant Hoffman's shoulder. (*Id.* ¶ 10.) Defendant Hoffman attempted to restrain Plaintiff's hand and place him in handcuffs, and Plaintiff continued to resist. (*Id.* at ¶¶ 10-11.) Defendant Hoffman attempted to pull Plaintiff to the ground to subdue him, which he was eventually able to do, despite Plaintiff's resistance. (*Id.* ¶ 11.) He was placed in handcuffs. (*Id.*) While he was attempting to subdue Plaintiff, he heard a blank round fired from the gun rail, and an order to all inmates in the yard to lay down on the ground. (*Id.* ¶ 12.) Plaintiff was restrained, and defendant Hoffman began to help him stand up, thinking the situation was under control. (*Id.* ¶ 13.) He then heard another officer fire a blank round, and another order for the inmates to lay on the ground, and he assisted Plaintiff to the ground. (*Id.*) He restrained Plaintiff there until Associate Warden Baca, Associate Warden Henson, Sergeant Bembry, Nurse Kabatay, and Nurse Davis arrived. (*Id.* ¶ 14.) He saw Plaintiff being examined by the nurses for injuries, and being taken away from the yard. (*Id.* ¶ 15.)

Defendant Hoffman also provides the unusual occurrence report from the incident. (Doc. # 92-1 at 2-3), as well as portions of Plaintiff's medical records (*id.* at 4-11). In the unusual occurrence report, no visible injuries were noted but the assessment states "potential for injury." (*Id.* at 2.) Progress notes from January 16, 2008, state that Plaintiff was involved in an altercation on January 2, 2008, where Plaintiff was taken to the ground and hit on the right side of his chest. (*Id.* at 4.) Plaintiff complained of pain and difficulty breathing. (*Id.*) Tenderness was noted in the rib. (*Id.*) He was prescribed medication. (*Id.*)

///

///

### ii.  Plaintiff's Version of Events

Plaintiff filed his own declaration in support of his opposition, stating that after he was restrained in handcuffs, lying face down in the dirt and rocks, not moving or resisting, when defendant Hoffman deliberately and maliciously lunged down into Plaintiff's back with his knee. (Doc. # 98-1 at 12.)  Plaintiff states that he did not touch defendant Hoffman in any way during his encounter with him, and disputes defendant Hoffman's claim that he placed his right hand on Hoffman's shoulder. (*Id.*, Doc. # 98-1 at 13, ¶ 11.)  Plaintiff also disputes that he ever called defendant Hoffman a punk, and that he refused to "cuff up." (*Id.*)  He asserts he was only taken to the ground by defendant Hoffman once.  (*Id.*)  He claims that he explained to the nurse that he was in extreme pain in his back and ribs, and that this conversation was recorded on video. (*Id.*)  Plaintiff has since requested the video, but was informed it could not be located. (*Id.* at 13.)

Plaintiff claims that following the incident, on January 5, 2008, he submitted a kite requesting medical attention for his rib. (*Id.*)  On January 16, 2008, Plaintiff requested that an X-ray be taken of his rib, but was told that NDOC would not X-ray fractured ribs. (*Id* at 13.)  Nurse Practitioner Graham told Plaintiff that he suffered a fractured rib, and the only treatment was to prescribe painkillers. (*Id.*)  Plaintiff asserts that he suffered extreme pain for approximately thirty days, which resulted in his inability to engage in normal activities, including laughing, raising up, or natural movement. (*Id.*)

Plaintiff submitted the declaration of Donnese Day in support of his motion, which appears to have been submitted in connection with Plaintiff's disciplinary hearing. (Doc. # 98 at 107.)  Mr. Day states that he observed defendant Hoffman searching Plaintiff on the date in question, and when defendant Hoffman swiped Plaintiff's foot, Plaintiff turned to say something to Hoffman, and Hoffman started to take Plaintiff somewhere when two shots were fired. (*Id.*)  After cuffing Plaintiff, defendant Hoffman got up and jumped down with his knee into Plaintiff's back for no reason. (*Id.* at 108.)  Mr. Day asserts that Plaintiff did not act aggressively towards defendant Hoffman. (*Id.*)

1   Plaintiff also submitted the declaration of Maurice May, who asserts that he personally
2   witnessed defendant Hoffman jump down on Plaintiff's back on January 2, 2008, resulting in
3   a great deal of pain to Plaintiff. (Doc. # 98-1 at 51-52.)

### iii.  Conclusion

5   It is clear that there is a genuine issue of material fact with respect to whether excessive
6   force was used by defendant Hoffman. While defendant Hoffman maintains that he acted
7   reasonably, and in a good faith effort to quell a disturbance of Plaintiff's creation, Plaintiff
8   maintains that he was subdued on the ground, not resisting, when defendant Hoffman
9   maliciously and deliberately drove his knee into Plaintiff's back.  In addition, while defendant
10  Hoffman claims that Plaintiff's lack of injury after the incident weighs in favor of a finding that
11  excessive force was not used, Plaintiff has raised a factual issue with his statements under oath
12  that he told the nurse immediately after the incident that he was experiencing pain in his back
13  and rib, that he was ultimately diagnosed with a fractured rib, and that he suffered from
14  excruciating pain as a result of this incident for thirty days.

15  Here, we are faced with two differing versions of events. A fact finder believing Plaintiff's
16  version of events could determine that Plaintiff was subjected to excessive force under the
17  circumstances.  On the reverse side, a fact finder believing defendant Hoffman's version of
18  events could determine that the use of force was reasonable and was "applied in a good-faith
19  effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*,
20  503 U.S. at 6-7.  As a result, summary judgment should be denied as to the excessive force
21  claim.[3]

22  ///
23  ///

---

25  [3] On June 21, 2012, Defendants filed an Errata to their Motion for Summary Judgment, consisting of the declaration of James Cook, that was inadvertently not included with the exhibits to the motion for summary
26  judgment. (*See* Doc. # 101.) The court is somewhat troubled by the fact that it was apparently not discovered that this declaration was inadvertently omitted from Defendants' moving papers until more than six months after the
27  Motion for Summary Judgment was filed, and some three months after briefing had closed on the motion. Nevertheless, the court has reviewed the declaration and finds that it does not change the fact that Plaintiff has
28  raised a genuine issue of material fact precluding the entry of summary judgment on the excessive force claim.

### 2.  Due Process

Plaintiff claims that Defendants violated his due process rights when they precluded him from calling witnesses and failed to provide him with a written statement of the evidence relied on and reasons for disciplinary action in connection with a disciplinary hearing related to the January 2, 2008 altercation with defendant Hoffman.  (Doc. # 6 at 9-11, Doc. # 5 at 6.)

When an inmate faces disciplinary charges, due process requires that the inmate receive: (1) written notice of the charges; (2) at least twenty-four (24) hours between the time the prisoner receives the written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 556.

### a.  Witnesses

Due process requires that in connection with a disciplinary hearing, an inmate be able to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals. *Wolff*, 418 U.S. at 556. Prison officials must make individualized determinations to limit the calling of witnesses, and must eventually explain their reasons for so limiting the prisoner's ability to defend himself. *See Ponte v. Real*, 471 U.S. 491, 497 (1985)*; Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003); *Mitchell v. Dupik*, 75 F.3d 517, 525 (9th Cir. 1996); *Bartholomew v. Watson*, 665 F.2d 915, 917-18 (9th Cir. 1982). In other words, "officials need not provide inmates an unfettered right to call witnesses, but they must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano*, 345 F.3d at 1079 (citation omitted). The proffered reasons for not allowing a witness must be "logically related to preventing undue hazards to 'institutional safety or correctional goals[.]'" *Ponte v. Real*, 471 U.S. 491, 487 (1985).

### i.  Defendants' Position

Defendants argue that Plaintiff stated at the disciplinary hearing that he did not wish to call witnesses, and this is corroborated by defendant Stroud and the NOTIS report from the hearing.  (*See* Doc. # 90 at 17, Doc. # 90-9 at 6-7 (Stroud Decl.), Doc. # 90-2 at 31 (Ex.  D).)

According to defendant Stroud, he was the disciplinary hearing officer at Plaintiff's disciplinary hearing on February 4, 2008, stemming from an altercation with Senior Correctional Officer Shawn Hoffman. (Doc. # 90-9 at 6, ¶ 4.) At the hearing, Defendant Stroud asserts that he asked Plaintiff if he wished to present testimony from witnesses and Plaintiff declined. (*Id.* at ¶ 5.)

In addition, NDOC's form titled "Summary of Disciplinary Hearing" indicates that Plaintiff was asked and declined to call a witness in connection with his disciplinary hearing. (*See* Doc. # 90-2 at 31.)

### ii.  Plaintiff's Position

Plaintiff, on the other hand, claims that defendant Stroud never asked him if he wanted to present witnesses at the disciplinary hearing.  (Doc. # 98-1 at 14, ¶ 16.) Plaintiff asserts that he was provided with a notice of classification hearing form that was "pre-filled out" by Calvin Bembry, in which Mr.  Bembry marked that Plaintiff did not wish to call a witness or be provided with a written statement. (Doc. # 98 at 6, ¶ 21; Doc.  # 98-1 at 13, ¶ 14.) Plaintiff asserts that he requested the opportunity to present witnesses Phillip Mercado and Larry Collins on the record in the disciplinary hearing, and his requests were denied by defendant Stroud.  (Doc. # 98-1 at 13, ¶ 17.)  Plaintiff claims that the disciplinary hearing was recorded, and would verify that he requested and was denied witnesses, but he has been informed that the tape recording of his disciplinary hearing could not be located. (*Id.*  at 14, ¶ 23.)

### iii.  Conclusion

The court finds there is a genuine issue of material fact as to the issue of whether Plaintiff was deprived of his due process right to call witnesses at the disciplinary hearing. Defendant Stroud claims that Plaintiff never requested to call a witness, while Plaintiff

maintains that he did ask to call two witnesses.  Plaintiff asserts that his version of events is corroborated by the recording of his disciplinary hearing, which Defendants were unable to produce.  If the fact finder were to believe defendant Stroud's version of events, a finding could be made that Plaintiff's due process rights were not violated.  If the fact finder were to believe Plaintiff's version of events, a finding could be made that his due process right to call witnesses at the disciplinary hearing was violated.  Accordingly, summary judgment should be denied as to this claim.

### b.  Written statement

*Wolff* requires that in connection with a disciplinary hearing, an inmate must be presented with a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action. *Wolff*, 418 U.S. at 564.  Such a statement might be used collaterally by the inmate in review by another body within the prison; by the prison when it wishes to take future action with respect to the inmate, such as initiating a transfer to another facility; or in future parole eligibility hearings. *Id.* at 565. In this context, the Supreme Court found that "[w]ritten records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding." *Id.*  It went on to state, "[f]urther, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly." *Id.*  "Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others." *Id.*

### i.  Defendants' Position

Defendants argue that Plaintiff had notice of the evidence relied upon in finding him guilty of disciplinary charges.  (Doc. # 90 at 17.) According to defendant Stroud, in finding Plaintiff guilty of the disciplinary charges, he relied on defendant Hoffman's report and Plaintiff's statements made at the hearing. (Doc. # 90-0 at 6, ¶¶ 6-7.) Defendant Stroud claims that Plaintiff had possession of Officer Hoffman's report of the incident from the notice of

charges at the hearing, and he informed Plaintiff at the hearing that his finding of guilt was based on Officer Hoffman's report and Plaintiff's admission that he placed his hands on Hoffman. (*Id.* at 7, ¶ 8.)

### ii.  Plaintiff's Position

Plaintiff disagrees, and argues that he was never provided with a *written* statement of the evidence relied upon and the reasons for the disciplinary action.   In support of his opposition, Plaintiff has provided various responses to discovery he propounded which touch on this subject.

One response admits that a written statement for the factual basis of the disciplinary conviction was not provided to Plaintiff on the disciplinary form. (*See* Doc. # 98 at 117 (response to Request for Admission No.  4).) The response is qualified with the following statement, "However, at this time in 2008, NOTIS is and was a work in progress and the disciplinary information in NOTIS did not prompt for a written statement as it does now. NOTIS is and was a continuous work in progress to make the forms more effective and efficient." (*Id.*)

The response to Request for Admission Number 5 says that the basis for the guilty finding was explained to Plaintiff on the record.  (*Id.*)  The response to Request for Admission Number 24 admits that a written statement was not made with respect to an explanation of the evidence relied on regarding the determination of guilt, but states that an explanation of the evidence relied on was made to Plaintiff at the disciplinary hearing on February 4, 2008.  (*Id.* at 119.)

Plaintiff's Interrogatory Number 3 asks: "Please explain in specific detail why you failed or refused to provide a statement of specific reasons for finding the Plaintiff guilty i.e.: the factual basis for the MJ2 assault and MJ3 battery at the Plaintiffs [sic] disciplinary hearing on February 4, 2008." (Doc. # 98 at 120 (original in all caps).)  The response states, in pertinent part:

///

> You admitted placing your hands on and resisting the officer and touching an officer is considered an assault in the NDOC; therefore, your own admissions were sufficient to find you guilty of both charges. In addition, the officer report supported the guilty finding, which was explained to you at the hearing. I explained all of this to you and I did not refuse to provide you with the specific reasons for finding you guilty.

(*Id.*)

Plaintiff's Interrogatory Number 7 asks: "In relation to the disciplinary form 111, summary of disciplinary hearing you processed, please identify your written statement of the evidence relied upon." (Doc. # 98 at 122 (original in all caps).) The response states, in pertinent part:

> During the time this incident occurred, a written statement of the evidence would be included in the comments section of NOTIS when an inmate disputed the facts. In this instance, however, you admitted the facts and specifically admitted that you put your hands on the officer and resisted the officer, therefore, your guilty findings were supported by your own admission.

(*Id.*)

Plaintiff's Interrogatory Number 9 asks: "Please describe in specific detail identifying the evidence you relied upon in finding Plaintiff guilty of the MJ2 assault." (Doc. # 98 at 123 (original in all caps).) The response states, in pertinent part:

> I relied upon the officer report which states that Inmate Schneider physically put his hands on S/CO Hoffman and actively resisted him causing shots to be fired and disrupting unit operations. Additionally, I relied upon inmate Schenider's own admission that he did put his hands on the officer and did resist the officer.

(*Id.*)

In an interrogatory that appears to have been served later, Plaintiff asks about the evidence relied on, and the response states in pertinent part:

> [T]he MJ2 assault charge and disciplinary action was [sic] were proper because the disciplinary process was followed. The reports were an accurate description of the transpiring events, which showed that Plaintiff admittedly failed to follow orders, resisted being restrained by Officer Hoffman, and was witnessed by the gun post officer resisting Officer Hoffman, refusing to comply with orders, and placing his hand on Officer Hoffman's shoulder and kicking Officer Hoffman. Further, the medical reporting of the incident showed that Plaintiff suffered no injuries in complete contradiction to Plaintiff's allegation that he suffered a broken rib. Finally, Plaintiff's allegations of excessive force against Officer Hoffman were referred to the Inspector General's Office and Officer Hoffman was exonerated of any wrongdoing because Plaintiff's allegations were not sustained. The evidence relied upon consisted of the Hearing Officer's report and confidential reports from the Inspector General's Office.

(*Id.* at 127.)

### iii.  Conclusion

From the various discovery responses, it is clear that the hearing officer relied on more than just Officer Hoffman and Plaintiff's statements at the hearing.  In fact, he also relied on the medical reports and confidential reports from the Inspector' General's Office.  It does not appear that these items were disclosed to Plaintiff in connection with the disciplinary hearing. In addition, viewing the evidence in the light most favorable to Plaintiff, as the court must, it does not appear that Plaintiff was ever provided with an actual *written* statement detailing *all* of the evidence relied upon and the reasons disciplinary action was taken. While defendant Stroud may have explained to Plaintiff at the hearing that his decision was based on defendant Hoffman's report and Plaintiff's purported admissions, Plaintiff was not given a written statement with this information, and was not told of any reliance on the medical reports and Inspector General's report.

The court disagrees with Defendants' assertion that the failure to provide a *written* statement of the evidence relied upon amounts to a "hyper-technical reading of the due process requirements outlined in *Wolff*." (*See* Doc. # 90:11-14.)  *Wolff* does require exactly what Plaintiff suggests, *i.e.*, a *written* statement: "We also hold that there must be a *written* statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 564-65 (internal quotation marks and citation omitted) (emphasis added). In fact, the requirement of a "written record" was repeatedly emphasized by the Supreme Court. *See, e.g., Wolff*, 418 U.S. at 564-65 ("there must be a written statement by the factfinders...," "[w]ritten records of proceedings will thus protect the inmate...," "[f]urther, as to the disciplinary action itself, the provision for a written record helps to insure...," "[w]ithout written records, the inmate will be at a severe disadvantage...").

Defendants have not met their burden of establishing there is no genuine issue of material fact with respect to Plaintiff's claim that his due process rights were violated when Defendants failed to provide him with a written statement of the evidence relied on and reasons for the disciplinary action.  As a result, summary judgment should be denied as to this claim.

### 3.  Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Padilla v. Yoo* (9th Cir. 2012); *Pearson v. Callahan*, 555 U.S. 223 (2009).

A "[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S.Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Padilla v. Yoo* (9th Cir. 2012). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and courts are "not to define clearly established law at a high level of generality[.]" *Id*. at 2084-85; *see also Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

Whether a constitutional right was violated and whether the right was clearly established at the time of the violation are legal questions for the court. *See Serrano v. Francis*, 345 F.3d 1071, 1080 (9th Cir. 2003); *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano*, 345 F.3d at 1077.

The court has previously found that Plaintiff has alleged colorable claims for excessive force and violation of his due process rights; therefore, the court need only examine whether the alleged conduct violated "clearly established" law at the time the conduct occurred.

#### i.  Excessive Force Claim

Defendant Hoffman argues he is entitled to qualified immunity because he could not

24

have reasonably known he was violating Plaintiff's rights by handcuffing and taking Plaintiff to the ground following Plaintiff's resistance and refusal to obey orders, and by using a reasonable amount of force.  (Doc. # 90 at 19.)

The court has found that a genuine issue of material fact exists as to the excessive force claim, precluding a determination of qualified immunity at this juncture.

### ii.  Due Process Claims

Next, Defendants argue they are entitled to qualified immunity on the due process claims because they could not have reasonably believed their conduct related to the disciplinary hearing violated Plaintiff's rights because Plaintiff did not request a witness at the hearing, and defendant Stroud notified Plaintiff he was finding him guilty based on defendant Hoffman's statement and Plaintiff's own admissions. (Doc. # 90 at 19-20.) They also argue that defendant Neven is entitled to qualified immunity because he was not directly involved in Plaintiff's disciplinary hearing, and Plaintiff's request to defendant Neven occurred after the hearing concluded.  (*Id.* at 20.)

### a.  Witnesses

As with the excessive force claim, the court has found that a genuine issue of material fact exists as to whether Plaintiff's due process rights were violated in connection with his allegation that he was denied the opportunity to present witnesses at his disciplinary hearing. This precludes the court from making a qualified immunity determination as to this claim at this time.

### b.  Statement of Evidence Relied On and Reasons for Taking Disciplinary Action

With respect to the claim that Plaintiff's due process rights were violated as a result of the alleged failure to provide him with a written statement of the evidence relied upon and reasons for the disciplinary action, the court finds that the law in this area, as outlined above, was clearly established when the alleged conduct occurred. *See Wolff*, 418 U.S. at 564-65. Therefore, qualified immunity is not appropriate with respect to this claim.

### c. Defendant Neven

Finally, the court will address defendant Neven's claim that he is entitled to qualified immunity because he was not directly involved in the disciplinary hearing. Defendant Neven argues that because he was not directly involved in the disciplinary hearing, he could not have been responsible for seeking witnesses or providing statements to Plaintiff.

The court finds that this argument is more appropriately addressed in an analysis of the substantive claims rather than under qualified immunity. The court has already found that it cannot determine qualified immunity as to the right to call witnesses, and it is not appropriate with respect to the written statement of evidence and reasons for taking disciplinary action. A thorough argument should have been presented, with reference to supporting evidence, regarding defendant Neven's participation, or lack thereof, in the alleged constitutional violations. The court is not convinced at this time that because defendant Neven was not the hearing officer, he is relieved of all possible liability. Defendant Neven may ultimately prove that his involvement after the disciplinary hearing did not rise to the level of a violation of Plaintiff's due process rights, but that argument has not been presented to the court by way of the instant motion.

In sum, defendant Neven's should not be granted qualified immunity on the basis asserted in the Motion for Summary Judgment.

///
///
///
///
///
///
///
///
///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Defendants' Motion for Summary Judgment (Doc. # 90).

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: June 25, 2012.

_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

27